UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARE TAYLOR,

                Plaintiff,                                Civil Action No. 10-cv-12519

      v.                                    District Judge Nancy G. Edmunds
                                              Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 12]**

        Plaintiff Leonare Taylor ("Plaintiff" or "Claimant") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties filed summary judgment motions (Dkts. 11, 12) which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), (Dkts. 3, 13).

## I.  RECOMMENDATION

        For the reasons set forth below, this Court finds that, even though omitting an express concentration limitation, the Administrative Law Judge's hypothetical to the Vocational Expert accurately portrayed Plaintiff's impairments and thus, the ALJ's decision to deny benefits is supported by substantial evidence.  Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the

Commissioner be AFFIRMED.

## II.  REPORT

### A.  Procedural History

Plaintiff alleges that she became unable to work on November 23, 2003.  (Tr. 365.)  The Commissioner denied Plaintiff's September 22, 2004 disability application on April 10, 2005. (Tr. 35-36, 38-39, 45-49.)  She then filed a request for a hearing and, on November 6, 2007, Plaintiff appeared with her present counsel before Administrative Law Judge ("ALJ") Peter N. Dowd, who considered the case *de novo*.  (Tr. 372-409.)  In a February 20, 2008 decision, the ALJ found that Plaintiff was not disabled.  (Tr. 13-24.)  The ALJ's decision became the final decision of the Commissioner on April 30, 2010 when the Appeals Council denied Plaintiff's request for review. (Tr. 2-4.)  Plaintiff filed this suit on June 24, 2010.

### B.  Background[1]

Plaintiff is 5' 4" tall and, at the time of the hearing before the ALJ, weighed 300 pounds and was 34 years old.  (Tr. 380, 382.)  Plaintiff lives with her three children who were ages twelve, eight, and two-and-half at the time she testified before the ALJ.  (Tr. 382.)  She graduated high-school and attended college "off and on" but was on academic probation at the time of the hearing.  (Tr. 380.) Plaintiff is also a certified nurse's assistant ("CNA").  (Tr. 380-81.)  Plaintiff worked for a few years at two nursing homes as a CNA, and worked as a cashier before that.  (Tr. 236, 384-87.)  She stopped working as a CNA in November 2003 because she hurt her back and had high blood pressure, and her employer felt it was "too risky" for Plaintiff to drive or do the type of work she

---

[1]On appeal to this Court, Plaintiff only asserts that the ALJ erred in regard to her mental impairments.  Accordingly, this background section focuses on the evidence related to those impairments.

2

was doing with her high blood pressure.  (Tr. 384.)

### 1. Plaintiff's Testimony

Although Plaintiff testified to physical impairments (hypertension, asthma, and hip, knee, and hand arthritis), she informed the ALJ that what bothered her the most was her depression, which dated back to 2003.  (Tr. 388-89.)  She testified:

> The depression is—I think that bothers me the most because it's like I can't focus, I can't pay attention.  The anxiety is pretty bad too because I'm nervous as heck right now.  I don't know.  I can't talk around people and . . . with the depression . . . on days that are gloomy and stuff . . . I can't hardly get . . . out of bed and it's just—it's terrible.

(Tr. 389.)  Plaintiff explained that at one point she had been in bed for three days straight because of fatigue and a depressed state of mind.  (Tr. 401.)  She also attested that while she had had a number of job interviews, she experienced focus and short-term memory problems during them. (Tr. 400; *see also* Tr. 97 (noting a "million things running through my mind" and forgetting what people told her before they finished speaking).)  Plaintiff explained that she had sought counseling. (Tr. 391.)  She attended regularly at first, but later her counselor changed and Plaintiff felt that he was not listening.  (Tr. 391.)  "[I]t just frustrated me and . . . it made me worse so I just quit going." (Tr. 391.)  At the time of the hearing, Plaintiff was taking Zoloft for her depression.  (Tr. 392.)

Plaintiff testified that a typical day involves waking at 6:00 a.m. and getting her kids ready for her mom to take them to school.  (Tr. 393.)  Around 8:00 a.m. she takes her medication, and at 11:00 a.m. takes a nap for a couple of hours.  (*Id.*)  Plaintiff goes with her mom to pick up her kids at 3:00 p.m., and helps them with their homework until 5:00.  (*Id.*)  She typically goes to bed at 10:00 p.m.  (*Id.*)  Plaintiff testified that she does not drive much, but cooks, goes shopping, manages the household funds, and uses the internet a few times a week for a couple of hours.  (Tr. 86, 393-

3

94.)  She stated that she got along well with her family and neighbors but had no friends.  (Tr. 395.)
Plaintiff attends church, eats out at restaurants, and "love[s] listening to music."  (Tr. 389-99.)

  2.  *Medical Evidence*

It appears that in second grade, Plaintiff was referred to a school psychologist because of
inadequate progress.  (Tr. 154.)  Sixth grade intelligence testing revealed that her "reading
comprehension and spelling were on a sixth grade level" but that she met the eligibility requirements
for a learning disability in math.  (Tr. 155-56.)  Plaintiff was also diagnosed with dyslexia around
this time.  (Tr. 170.)  A ninth-grade reevaluation found that Plaintiff was "functioning in the low
average range of overall intellectual ability" but also noted that Plaintiff had been placed in a
"special education resource room" for "specific math instruction."  (Tr. 137, 151.)  At graduation,
Plaintiff had a verbal IQ score of 85, a performance IQ score of 75, and a full-scale IQ score of 78,
which the administering psychologist classified as consistent with the "Low Average" range of
intelligence.  (Tr. 138.)

In February 2004, Margaret Cappone, Ph.D. and Nathalie Menendes, Psy.D. evaluated
Plaintiff on behalf of the State Disability Determination Service ("DDS").  (Tr. 170.)  Plaintiff told
the doctors that for the past year she had crying spells, and suicidal and homicidal ideation, but she
denied any suicide attempts.  (*Id.*)  She also stated that she felt lost and hopeless, and had little
motivation.  (*Id.*)  At the time, Plaintiff was taking Zoloft for her depression and anxiety.  (*Id.*)  After
evaluation, Drs. Cappone and Menendes diagnosed Plaintiff with major depressive disorder,
recurrent, moderate; panic disorder without agoraphobia; reading disorder; and assigned her a

4

Global Assessment Functioning ("GAF") score of 61.  (Tr. 173.)[2]

Also in February 2004, Ronald Marshall, Ph.D. completed a Mental Residual Functional Capacity Assessment form ("MRFCF") and a Psychiatric Review Technique form ("PRTF") regarding Plaintiff on behalf of the State DDS.  (Tr. 176-93.)  The latter provides that Plaintiff had a learning disability, recurrent moderate major depressive disorder, and panic disorder.  (Tr. 181, 183, 185.)  The PRTF also states that Plaintiff had a moderate limitation in concentration, persistence, or pace, but only mild limitations in activities of daily living and social functioning (with no episodes of decompensation).  (Tr. 190.)  In Section I of the MRFCF, the "Summary Conclusions" section, Dr. Marshall found that Plaintiff had moderate limitations in six out of 20 mental functioning categories: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) maintaining attention and concentration for extended periods; (4) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (5) completing a normal workday or workweek without interruptions from psychologically based systems and performing at a consistent pace without an unreasonable number of rest periods; and (6) responding appropriately to changes in the work setting.  (Tr. 177.)  He also noted that her delay recall was only one out of three objects.  (Tr. 192.)  He nonetheless opined that Plaintiff retained the ability to perform unskilled work on a sustained basis.  (*Id.*)

---

[2]"GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning. . . . A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.  Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006) (citing *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., Text Revision 2000)).  A score of 51 to 60 reflects the assessor's opinion that the subject has moderate symptoms or moderate impairment of social or occupational functioning.  *Id.* at 511.

In March 2005, Edward Tava, Ed.D., evaluated Plaintiff for the State DDS.  (Tr. 236-40.) Plaintiff informed Dr. Tava that she was taking medication for depression, but was not attending counseling.  (Tr. 236.)  Plaintiff also stated that while she got along relatively well with others, she avoided people.  (Tr. 237.)  Dr. Tava observed that Plaintiff had very poor self-esteem, seemed dependent on others, and "in general, the overall affect of this client seems very unstable, such that she appears to be very nervous but also very anxious."  (Tr. 238.)  He opined that Plaintiff "appears to be a very anxious individual, who most likely, tends to experience a great deal of difficulty coping with even very minor problems. . . . [I]n addition to such anxiety, this client also seems very depressed as well."  (Tr. 239.)  Dr. Tava diagnosed Plaintiff with generalized anxiety disorder and dysthymic disorder, and assigned her a moderate GAF score of 54.  (Tr. 239-40.)  Her prognosis was "guarded."  (Tr. 240.)

In April 2005, Dr. Marshall again reviewed Plaintiff's records on behalf of the State DDS and completed a second MRFCF and PRTF.  As before, he found that Plaintiff had a moderate limitation in concentration, persistence, or pace, and mild limitations in activities of daily living and social functioning.  (Tr. 257.)  Regarding the MRFCF, in addition to the same six moderate limitations he marked on the February 2004 MRFCF, Dr. Marshall's "Summary Conclusions" section included a moderate limitation in interacting with the general public.  (Tr. 243-44.) Plaintiff's recall was four forwards and three back, but her delayed recall was zero out of three objects.  (Tr. 259.)  As before, his conclusion was that Plaintiff may work better in a low stress environment but she retained the ability to perform unskilled work on a sustained basis.  (Tr. 259.)

In October 2005, Plaintiff saw Nicole Benkert, a therapist at the Westlund Guidance Clinic, for depression, forgetfulness, and difficulty focusing.  (Tr. 313.)  Her symptoms were noted as

6

depressed, anxious, mildly obsessive-compulsive, angry, withdrawn, sad, and confused. (Tr. 313.) Benkert diagnosed Plaintiff with dysthymia (chronic depression) and social phobia, and assigned Plaintiff a moderate GAF score of 51. (Tr. 316.) She recommended bi-weekly therapy sessions. (Tr. 316-17.)

In appears that Benkert referred Plaintiff to Venkat Talasila, M.D., a consulting child psychologist, for a psychiatric evaluation. (Tr. 311-12.) During the November 2005 evaluation, Plaintiff reported that she had difficulty with her memory and staying focused. (Tr. 311.) Plaintiff also "cried with tears when she talked about some losses in her family during [the month of] December and also one of her cousins died today." (Tr. 312.) Upon evaluation, Dr. Talasila found that Plaintiff's "memory seems to be intact. Concentration is fair. Her judgment and insight seem to be fair." (Tr. 312.) He diagnosed Plaintiff with adjustment disorder with anxiety and dysthymia. (*Id.*) Dr. Talasia encouraged counseling but did not prescribe any medication because Plaintiff was not showing any significant psychopathology, and Plaintiff's depression was mostly situational. (*Id.*)

In December 2007, Holly Conkright, a physicians assistant who treated Plaintiff on more than one occasion, completed a Medical Source Statement form. (Tr. 343.) She found that Plaintiff had moderate limitations in relating to and interacting with coworkers and maintaining concentration for at least two-hour increments. (*Id.*) She further found that Plaintiff was "markedly limited" in the following categories: (1) ability to understand and carry out complex job instructions, (2) ability to understand and carry out simple one-or-two step job instructions, (3) ability to deal with the public, (4) ability to withstand stress of an eight-hour work day and day-to-day work activity. (*Id.*)

7

### 3. Vocational Expert's Testimony

In addition to a number of physical limitations, the ALJ asked Vocational Expert ("VE") Michele Robb to assume a hypothetical individual of Plaintiff's age, education, and past work experience who "could do simple, routine and repetitive work activities . . . in a stable work environment. This is generally a functional capacity for unskilled work activities." (Tr. 405.) The ALJ responded that there would be jobs that Plaintiff could perform in the lower two-thirds of Michigan: 21,000 cashier positions, 8,000 general office clerk positions, and 7,000 inspector positions. (*Id.*) On cross, the VE conceded that if the hypothetical individual was "non-productive" beyond the standard breaks in an eight-hour day, the person would be precluded from work. (Tr. 406.)

### C. Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

8

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 23, 2003—Plaintiff's alleged onset date. (Tr. 15.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the hips and knees with left hip and back pain, (2) morbid obesity, (3) asthma, and, as relevant here, (4) anxiety with depression/dysthymia and history of learning disorder. (Tr. 16.) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 16.) Between steps three and four, the ALJ determined that Plaintiff had the mental residual functional capacity to perform "simple, routine and repetitive work activities in a stable work

environment which would be compatible with doing unskilled work activities." (Tr. 17.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 22.) At step five, the ALJ relied on VE testimony in response to his hypothetical, and found that work existed in significant numbers that Plaintiff could perform: cashier, general office clerk, and inspector. (Tr. 23.)

### E.  Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);  *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The Court

"may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535.  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

**F. Analysis**

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  Plaintiff's primary argument is that the ALJ's hypothetical—which included the mental limitation of "simple, routine and repetitive work activities done in a stable work environment"—did not accurately portray Plaintiff's mental impairments because it did not account for her "'moderate' limitation in the ability to maintain concentration, persistence and pace . . . which is the ability to complete a job on time."  (Dkt. 11, Pl.'s Mot. at 12-13.)  This assignment of ALJ error—that hypothetical limitations such as "simple," "routine" and

11

"unskilled" fail to account for moderate concentrational deficiencies—is not uncommon and the case law resolves it both ways. Indeed, Defendant acknowledges the relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks[3]—but also correctly points out that other cases have found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.[4]  (*See* Dkt. 12, Def.'s Mot. at 11.)

---

[3]*See e.g.*, *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations."); *Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to "unskilled, light jobs." These parameters are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job." (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09-14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did not incorporate [that] limitation . . . into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r of Soc. Sec.*, No. 10-10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

[4]*See e.g.*, *Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *7-8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of 'moderate' limitations . . . are not incompatible."); *Latare v. Comm'r of Soc. Sec.*, No. 08-13022, 2009 WL 1044836, at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions

In analyzing this case law, the Court agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task. *See e.g.*, *Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%-30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient."); *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.").

However, the Court also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision. Indeed, in a virtually identical case, another court in this District explained:

> Taken in isolation, the hypothetical limitations consisting of "[s]imple routine tasks in a low stress environment" and "minimal changes in the work place setting" might appear inadequate to account for "moderate" concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical

---

and requiring little, if any, judgment."); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

> question and the ALJ's finding of "moderate" limitations findings are
> not incompatible.

*Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008);
*see also Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept.
30, 2010) ("There may be cases where such moderate limitations preclude the performance of even
some simple, unskilled tasks.  Plaintiff does not, however, explain why the facts of this particular
case require a more detailed hypothetical question to adequately account for his own moderate
limitations in concentration, persistence, or pace.").

In *Hess,* as here, Dr. Marshall had completed both a PRTF finding that the claimant had a
moderate limitation in concentration, persistence, and pace, and a MRFCF finding that the claimant
had moderate limitations in being "punctual within customary tolerances, work[ing] without
psychologically based interruptions, and perform[ing] at a consistent pace."  *Id.* (internal citations
omitted).  As is also the case here, "Dr. Marshall concluded that [the] [p]laintiff 'appear[ed] to get
along with others, but would work better in a low stress environment,'" and that the plaintiff
"'[r]etain[ed] the ability to do unskilled tasks on a sustain[ed] basis.'"  *Id.* at *4.

The court in *Hess* concluded that because the ALJ had relied on Dr. Marshall's PRTF to
reach his conclusion that Plaintiff had moderate limitations in concentration, persistence, and pace,
it was reasonable for the ALJ to also rely on Dr. Marshall's ultimate conclusion that Plaintiff could
perform unskilled work on a sustained basis, and, accordingly, to omit a concentration-based
limitation from the hypothetical.  *Id.* at *8.  "Plaintiff's argument for the selective adoption of Dr.
Marshall's 'moderate'  limitations without considering his ultimate conclusion would amount to a
distortion of the record." *Id.* at *8.  The court continued, "Likewise, Dr. Marshall's observation that
Plaintiff experienced a moderately impaired ability to be punctual and complete her work without

14

psychologically based interruptions must be analyzed alongside his conclusion that Plaintiff was capable of a limited range of work." *Id.*; *see also Lewicki*, 2010 WL 3905375, at *3 ("Plaintiff's objection ignores a particularly compelling piece of evidence provided by the same state psychologist who diagnosed Plaintiff's mental limitations in the first place. The psychologist diagnosed moderate mental impairments, but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work.").

As in *Hess* and *Lewicki*, this Court finds that Dr. Marshall's findings that Plaintiff has moderate limitations in concentration, persistence, and pace have to be considered in conjunction with his ultimate conclusion (twice reached) that, despite the concentrational limitations, Plaintiff could perform unskilled work on a "sustain[ed] basis." (Tr. 192, 259.) That is, while the MRFCF and PRTF forms provide that Plaintiff had concentration and pace limitations, the author of those forms also found that Plaintiff could concentrate sufficiently to perform unskilled work with consistency. Although, as Plaintiff emphasizes, the ALJ did not explicitly discuss Dr. Marshall's opinions, it appears that he relied upon them. Dr. Marshall was the only person to have rated Plaintiff's B criteria, the ALJ's B criteria findings track Dr. Marshall's exactly, and the ALJ made the factual determination of "moderate" difficulties in concentration, persistence, and pace (which Plaintiff now relies upon) in the context of rating Plaintiff's B criteria. (Tr. 17.)

Nor does the other medial evidence of record render the ALJ's decision to omit a concentration limitation from his hypothetical unreasonable. Physician Assistant Conkright found that Plaintiff had marked limitations in several concentrational categories (Tr. 343), but the ALJ gave reasons for rejecting Conkright's opinion including that Conkright's severe mental limitations were inconsistent with Plaintiff's ability to live independently. (Tr. 21-22.) Plaintiff has not argued

15

that the ALJ's reasons are inadequate.  Nor has Plaintiff argued that the ALJ's decision to reject Conkright's opinion is not supported by substantial evidence.  Drs. Cappone and Menendes, who assigned Plaintiff a GAF score of 61, made no explicit findings as to Plaintiff's ability to concentrate on her work or perform at a particular pace (Tr. 170-71), and therefore did not contradict Dr. Marshall's more detailed concentration and pace evaluations.  Dr. Tava opined that Plaintiff "appears to be a very anxious individual, who most likely, tends to experience a great deal of difficulty coping with even very minor problems."  (Tr. 239.)  However, the ALJ discussed Dr. Tava's opinion and noted that he assigned a GAF score of 54 indicating "moderate symptoms."  (Tr. 20.)  Moreover, difficulty in coping with minor problems does not, at least under substantial evidence review, necessarily equate to something beyond moderate concentrational limitations allowing for "simple, routine and repetitive work" in "a stable work environment."  *See Latare*, 2009 WL 1044836, at *3 ("Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment."); S.S.R. 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").  Finally, Dr. Talasila's opinion is in accord with Dr. Marshall's finding of sustained, unskilled work despite moderate concentrational issues: he found that Plaintiff's "memory seems to be intact.  Concentration is fair.  Her judgment and insight seem to be fair."  (Tr. 312.)

The present case is distinguishable from *Ealy v. Comm'r of Soc. Sec.*, where the Sixth Circuit Court of Appeals held that the ALJ's hypothetical was inaccurate because it did not include the State

16

DDS consultant's assessment that specifically limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical." 594 F.3d 504, 516 (6th Cir. 2010). In *Ealy*, "the parties argue[d] at length whether and under what circumstances it is sufficient for an ALJ to include in a vocational hypothetical only the [MRFCF] Section III . . . [a]ssessment and not also the more specific checked limitations in Section I" of that form. *Id.* The Court found it unnecessary to resolve that dispute because it assumed, in favor of the Commissioner, that the DDS consultant's Section III finding of two-hour concentration segments captured the more specific checkbox limitations in Section I of the MRFCF. *Id.* Because the ALJ's hypothetical did not even include the Section III proxy of the Section I concentration limitations, however, the Court held that it did not accurately portray the claimant. *Id.* at 517. Here, unlike *Ealy*, Dr. Marshall's Section III findings[5] do not simply incorporate the concentrational difficulties in Section I of the MRFCF forms; rather, his Section III finding substantially reduces the significance of the Section I limitations by indicating that, despite those limitations, Plaintiff could perform unskilled work on a sustained basis. Restated, a reasonable interpretation of Dr. Marshall's opinion *as a whole* is that the concentration limitations identified in Section I of the MRFCF do not preclude consistent or sustained concentration in a stable, simple, and repetitive task setting. *See Hess*, 2008 WL 2478325, at *7; *Lewicki*, 2010 WL 3905375, at *3. Thus, this case is unlike *Ealy* where the examiner's Section III findings focused on – and essentially enhanced – the claimant's concentration limitations. By contrast, here, the examiner's Section III findings do not include any specific concentration limitations and indicate the claimant has the

---

[5]Dr. Marshall's Section III findings actually appear in the "Consultant's Notes" section of the two PRTFs he completed contemporaneously with the MRFCFs. (*See* Tr. 178, 192, 259.)

ability to do unskilled tasks on a sustained basis.

Plaintiff additionally argues that the ALJ erred because he did not specifically discuss Dr. Marshall's opinions or Dr. Tava's statement that Plaintiff "appears to be a very anxious individual, who most likely, tends to experience a great deal of difficulty coping with even very minor problems." (Pl.'s Mot. at 15-16.) But Plaintiff makes no argument that the ALJ erred at step three in finding that Plaintiff's mental impairments do not meet or medically equal a listed impairment. In fact, Dr. Marshall found that Plaintiff was not markedly limited in any of the B criteria and had mild limitations in two categories (Tr. 190, 257), and, in view of those explicit findings, substantial evidence supports the ALJ's implicit decision that Dr. Tava's opinion does not translate to "marked" limitations in two B criteria categories.[6] To the extent that the ALJ's failure to explicitly discuss Dr. Marshall's opinions and one aspect of Dr. Tava's opinion affects the ALJ's RFC assessment or step five finding that there are substantial jobs in the economy that Plaintiff could perform, those arguments are encompassed by Plaintiff's challenge to the accuracy of the ALJ's hypothetical and have been resolved by the Court above.

## G. Conclusion

For the foregoing reasons, this Court finds that the ALJ's decision to omit a concentration limitation from his hypothetical to the VE is supported by substantial evidence. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of

---

[6]The B criteria are met by a showing of at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. pt. 404, subpt. P, app'x 1.

18

42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## III.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  May 17, 2011


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 17, 2011.


s/Jane Johnson
Deputy Clerk

19